## SAMUEL FOWLER et als. v. JOHN B. FRISBIE, D. N. HASTINGS, AND C. J. MOSLEY.

SUIT ON INJUNCTION BOND.—An order made by the Court, dissolving an injunction, without assigning the grounds on which the dissolution was granted, is, *prima facie*, an adjudication that the plaintiff was not entitled to the injunction, and sufficient to enable him to maintain an action on the injunction bond.

PARTIES PLAINTIFF IN SUIT ON INJUNCTION BOND.—If several parties are severally in possession of and cultivating in separate parcels a tract of land, and are sued jointly in ejectment to recover possession of the whole tract, and an injunction is obtained restraining them jointly from taking off the crops, these parties cannot maintain a joint action for damages on the injunction bond, provided their damages are not joint. They can maintain a joint action for such damages only as are joint, such as attorney's fees.

ACTION ON INJUNCTION BOND FOR SEVERAL DAMAGES.—The fact that the plaintiff brings a joint action against several persons as trespassers, and obtains an injunction against them jointly, does not estop him, in an action brought against him on the injunction bond, from showing that the damages were several, and from claiming that they cannot maintain a joint action for several damages.

APPEAL from the District Court, Seventh Judicial District, Solano County.

The plaintiffs recovered judgment for two thousand dollars damages, and the defendants appealed.

The injunction in *Frisbie* v. *Fowler et als.* was issued upon the complaint alone, and without notice. It was issued July 14th, 1864, and dissolved May 7th, 1866. No judgment in *Frisbie* v. *Fowler et als.* was offered in evidence.

The other facts are stated in the opinion of the Court.

*Wm. S. Wells*, for Appellants.

*M. A. Wheaton*, for Respondents.

By the Court, CROCKETT, J.:

This is an action on an injunction bond, in which the undertaking is in the usual form, to wit: that the plaintiff in that action will pay to the parties enjoined such damages, not exceeding the sum named therein, as such parties may

sustain by reason of the injunction, "if the said District Court finally decided that the said plaintiff was not entitled thereto." On the trial it appeared that the Court entered the following order:

"In this cause it is by the Court now here ordered that the defendants' motion to dissolve the injunction herein be and the same is hereby granted; and that the injunction heretofore granted therein be and the same is hereby dissolved, vacated, and set aside."

It does not appear on what ground the injunction was dissolved, and the defendants insist that this order does not establish the fact that the District Court finally decided that the plaintiff in that action was not entitled to the injunction when it issued, and consequently that the plaintiffs have failed to show a breach of the undertaking.

But as we construe the order, it is, *prima facie*, at least, an adjudication that there was no foundation for the injunction, and that it ought not to have issued. If the fact was otherwise, it was incumbent on the defendants to see that the order contained proper recitals, showing that the injunction was dissolved for other reasons, or to have made the fact appear in some other proper method. Standing alone, and without explanation, the order was an adjudication that the injunction ought not to have issued.

The action in which the injunction issued was an action at law to recover the possession of a tract of land containing about fifteen hundred acres, and a part of the Suscol Rancho; in which action there was a prayer for an injunction *pendente lite*. In the complaint it was alleged as a foundation for the injunction that there was standing and growing on the premises valuable grasses, suitable for hay and for pasturage, and that the portion of the premises occupied by the defendants therein was suitable only for such purposes, and that, owing to the peculiar scarcity of growing grass during that season, the loss of it could not be computed in damages, and that

the defendants were insolvent; that the plaintiff had been in possession of said premises up to the time of the entry of the defendants; that the defendants had no title or claim of right to said premises, and were mere squatters; that the defendants were destroying the grasses and the seeds thereof, so that it would be permanently eradicated; that the plaintiff had the premises inclosed with a good fence, and was actually occupying the same for pasturage when the defendants entered; that the defendants had forcibly resisted the plaintiff in this use of the land, and threatened to continue such forcible resistance; that they had forcibly seized and shut up a portion of his cattle grazing on said land; that the defendants had confederated with others unknown to accomplish these wrongs, and had threatened to tear down and destroy the plaintiff's buildings, fences, shrubbery, and grasses on said premises; wherefore he prayed for an injunction restraining them from committing these wrongs. On the filing of the complaint, the injunction was issued as prayed for.

It does not appear what answer, if any, was filed by the defendants in that action, nor on what grounds of defense they relied. But we infer from the evidence in this action that after the rejection of the Suscol Grant by the Supreme Court, the defendants in that action (plaintiffs in this) claimed that the land included in the grant had become vacant public land, and was therefore liable to settlement and pre-emption, and that they entered upon the premises in controversy, each claiming a separate parcel as a pre-emption. This is a joint action brought by all the parties who were enjoined, and in their complaint, after reciting the commencement of the action by Frisbie, the issuing and dissolution of the injunction, and the execution of the injunction bond, they aver that by reason of the injunction they lost and were deprived of the use of the tract of land from July, 1864, to March, 1866, when the injunction was dissolved, and that such use was of the value of twelve thousand four hundred dollars; and that they paid an attorney's fee of two hundred and fifty

dollars in order to obtain a dissolution of the injunction; and the prayer is for a judgment for these sums against Frisbie, and against the sureties for five thousand dollars, the amount of the bond. The answer, after denying most of the material averments of the complaint, denies also that the plaintiffs ever were in the joint use or occupation of the premises, or any part thereof; and, as affirmative matter, alleges that long before the injunction issued, and ever since, Frisbie was in possession of said premises, claiming title under Vallejo and the United States, and at the time of the commencement of this action was prosecuting proceedings for the purchase of the same under the special Act of Congress of March 3d, 1863, allowing purchasers under Vallejo to pre-empt the land; that he was the *bona fide* purchaser from Vallejo of the tract in contest, for a full and fair price, and had received a conveyance therefor; and long before the grant was rejected had inclosed the whole tract with a good fence, and reduced the same to his actual possession, and so held the possession when the grant was rejected; that after the grant was rejected the plaintiffs entered into separate portions of the tract, under pretended claims of pre-emption, and built small shanties thereon, and claimed to own portions of the land; but, notwithstanding these proceedings, that Frisbie maintained his possession of the greater part of the tract; that before the plaintiffs perfected their claims, or took any legal or valid steps to do so, the special Act of Congress referred to withdrew the whole Suscol Rancho from the operation of the general pre-emption laws, and granted the right of purchase, conditionally, to Frisbie, who, in due time, prosecuted his claim under the Act, and the land was finally awarded to him by the Land Department of the United States; that the plaintiffs were parties to said proceedings, and are bound thereby, and their rights to the land have been thus finally adjudicated against them, and their alleged pre-emption claims have become null and void; that during the pendency of said proceedings, and whilst he was still in the use and occupation of said lands, or the greater part thereof, he

caused said injunction to issue, to enable him to maintain his possession and to protect his property from destruction during the pendency of said proceedings; that he was influenced to this course by the desperate characters of the plaintiffs, and the fact that they were all insolvent, and with the hope that he might thereby prevent breaches of the peace and the destruction of his property; that the injunction did not have the effect to divest the plaintiffs of any interest in or possession of the land which they had before, and did not in any way alter or impair their rights; that Frisbie's possession continued as before, and was maintained in the same manner it had previously been, independently of the injunction; that the plaintiffs had no joint interests in the land, and their claims thereto were several, and not joint, and that they have no joint interest in the subject matter of this action, other than such as may arise by reason of the joint payments of counsel fees. On the issues presented by the complaint and answer, the cause was submitted to a jury, which returned a verdict for two thousand dollars for the plaintiffs. The defendants moved for a new trial, which was denied, and they have appealed.

In the progress of the trial, it appeared that up to the time of the entry of the plaintiffs, the entire tract had been in the actual possession of Frisbie and his tenants; that the plaintiffs claimed that it was vacant public land open to pre-emption, and entered upon it as such; that each severally entered upon a separate, specific portion, with a view to pre-empt it; that they neither had nor claimed to have any joint interest in the land, nor any joint possession or right of possession; that notwithstanding their entry Frisbie maintained his possession of a large portion of the tract. The plaintiffs offered to prove the value of the use and occupation of the entire tract during the period when the injunction was in force, to which the defendants objected, on the ground that the plaintiffs, having no joint interest or possession, were not entitled to recover jointly the value of the use and occupation, and that, if entitled to recover at all, each should

recover only for the use and occupation of his own particular tract. But the Court overruled the objection and admitted the testimony, to which ruling the defendants excepted, and this is assigned as one of the errors on this appeal.

The exception was well taken, and the testimony should have been excluded. Whilst it is true that in obtaining the injunction Frisbie treated them as joint trespassers, and, after restraining them as such, is estopped to deny that they occupied that relation to each other and to him, it by no means follows that when they come into Court to establish the damages they have suffered by reason of the injunction, he is estopped from showing that they had no joint claim to or possession of the land, and therefore suffered no joint damage by being deprived of its use. Much less can it be maintained, when it appears on their own showing that they had no joint interest in or possession of the land, that they shall, nevertheless, be entitled to recover jointly for its use and occupation. In the injunction suit Frisbie does not, either expressly or by implication, admit that the plaintiffs have any joint claim or possession; on the contrary, he avers that they "have no title or claim of right to said premises whatever, and that they are mere squatters thereon," and alleges in substance that they are mere intruders, without claim of right, who have combined to commit a trespass on his property. We do not perceive by what process of reasoning it can be established that an allegation that a number of persons have combined for the mere purpose of committing a naked trespass upon real estate can be held to be an admission that they had a joint interest in the property, and are jointly damaged by being prevented from using it. But even though Frisbie's complaint should be held to contain such an admission, the plaintiffs have proved affirmatively in this action that there was no such joint interest or possession; and they cannot claim, in the face of their own proofs, that there was. It was, therefore, error in the Court to admit evidence of the value of the use and occupation of the entire tract, as the basis of the recovery of a joint judg-

ment.   If there can be any *joint* recovery in the action, it can only be for such damages as the plaintiffs have jointly suffered, and not for the damages suffered by each severally. Nor do we comprehend on what ground it can be maintained that the plaintiffs are entitled to recover for the use and occupation of the entire tract, when the proofs conclusively show that Frisbie not only had the prior possession of the whole, but maintained the possession of a large portion of it during the entire period when the injunction was in force. The plaintiffs have shown neither title to nor prior possession of this portion.   How, then, are they damaged in having been restrained from committing a trespass on Frisbie's possession ?

The Court also erred in refusing to instruct the jury, as requested by the defendants, that the plaintiffs can only recover such damages as they can show themselves jointly to have sustained.   It is unnecessary to discuss the other instructions given or refused, inasmuch as the principles decided will govern the case on another trial, and the instructions should be framed in accordance with these views.

Judgment reversed and cause remanded for a new trial, and the remittitur ordered to issue forthwith.